UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **CONSENT DECREE** |
| Plaintiff, | ) | |
| v. | ) | |
| HUMBOLDT COUNTY, | ) | Civil Action No. 16-5139 NJV |
| Defendant. | ) | |

## I. BACKGROUND

### A. INTRODUCTION

1. This matter is before the Court for entry of a consent decree agreed to by Plaintiff United States of America ("United States") and Defendant Humboldt County, California ("County"), collectively the "Parties."

2. The United States brought this civil action to enforce Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131–12134 and the U.S. Department of Justice's ("Department") regulation implementing Title II, 28 C.F.R. Part 35.

3. The United States alleges that Humboldt County has discriminated, and continues to discriminate, against individuals with disabilities by failing to make County facilities, programs, services, and activities accessible to and useable by individuals with disabilities in violation of the ADA.

4. The Department initiated a compliance review of Humboldt County under its Project Civic Access ("PCA") initiative, a wide-ranging effort to ensure that cities, counties, and other public entities throughout the country comply with the ADA by eliminating physical, communication, and other barriers that prevent people with disabilities from participating fully in community life. The Department's review of the County included a review of its programs and an accessibility survey of over 50 facilities. As the result of its review, the Department found numerous violations of the ADA, notified the County of the violations and negotiated a settlement agreement in which the County committed to bring its facilities, programs, services and activities into compliance with the ADA. The settlement agreement, which expired on July 23, 2011, included timelines for the County's compliance. The County failed to complete most of the actions required by the agreement and the County continues to have barriers to access that prevent individuals with disabilities from participating in County programs, services, and activities and that violate the ADA.

### B. PARTIES

5. Plaintiff is the United States of America.

6. Defendant is Humboldt County, California. The County is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1)(A), and is subject to the ADA and its implementing regulation.

7. Defendant owns and operates facilities, programs, services, and activities within the meaning of the ADA.

**C.     JURISDICTION AND VENUE**

8. The Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1345 and 42 U.S.C. § 12133. The Court may grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 12133.

9. Venue is proper in the Eureka Division of this District pursuant to 28 U.S.C. § 1391 because the County is located in this District and all of the claims and events giving rise to this action occurred in this District.

## II.     AGREED RESOLUTION

10. The Parties agree it is in their best interests to resolve this matter by entry of this Consent Decree. The Parties agree and stipulate to the Court's entry of this Consent Decree resolving the Plaintiff's complaint against the County.

Now it is hereby ORDERED AND DECREED as follows:

**A.     GENERAL NONDISCRIMINATION REQUIREMENTS**

11. Humboldt County will not discriminate against individuals with a disability, and will not, based on disability:

   a)   Deny the benefits of its programs, services, and activities. 28 C.F.R. § 35.130(b)(1).

   b)   Provide an unequal, different, or separate opportunity to participate in its programs, services, and activities. 28 C.F.R. § 35.130(b)(1), (3).

   c)   Limit the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others. 28 C.F.R. § 35.130(b)(1)(vii).

   d)   Determine the site or location of a facility that has the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination or that have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the program, service, or activity with respect to individuals with disabilities. 28 C.F.R. § 35.130(b)(4).

12. Humboldt County agrees that it will comply with the ADA and the Title II regulation by:

a) Administering its programs services, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130(d).

b) Operating each program, service, or activity so that, when viewed in its entirety, it is readily accessible to and usable by individuals with disabilities. 28 C.F.R. §§ 35.149-.150.

c) Ensuring that facilities for which construction or alteration was begun after January 26, 1992, are readily accessible to and usable by people with disabilities, in accordance with the Title II regulation and the applicable accessibility standards. 28 C.F.R. § 35.151.

d) Ensuring that communications with people with disabilities, including applicants, participants, and members of the public, are as effective as communications with others, including furnishing auxiliary aids and services when necessary. 28 C.F.R. § 35.160.

**B. NOTIFICATION**

13. Within thirty (30) days of the entry of this Consent Decree, the County will adopt and follow the attached *Notice under the Americans with Disabilities Act*, Attachment A ("Notice"); distribute the Notice to all its agency heads; publish the Notice in a local newspaper of general circulation serving the County on four (4) different days, including two (2) Sunday editions; post the Notice on its Internet Home Page (humboldtgov.org); and post the Notice in conspicuous locations in its public buildings. The County will refresh each posted Notice, and update the contact information contained on each Notice, as necessary, during the term of this Consent Decree. The County will provide the Notice to any person upon request.

14. Within three (3) months of the entry of this Consent Decree, and annually thereafter for the duration of the term of this Consent Decree, the County will implement, follow, and send to the United States its written procedures to inform all interested individuals of the existence and location of its accessible programs, services, and activities.

**C. ADA COORDINATOR**

15. Within one hundred eighty (180) days of the entry of this Consent Decree, the County will appoint or hire one or more ADA Coordinators, who must be pre-approved by the United States and trained in and knowledgeable about the ADA. The ADA Coordinator(s) will coordinate the County's

effort to comply with this Consent Decree and the ADA, including any investigation by the County of ADA-related complaints. The County will make available to all interested individuals the name(s), office address(es), telephone number(s), and email address(es) of the ADA Coordinator(s). The County will also post this information on its website, in an accessible and conspicuous location (*i.e.*, directly linked from the County's homepage) and accessible format (*i.e.*, HTML). If the County changes its ADA Coordinator(s), it will notify the United States in writing, and update the name and contact information everywhere it appears, within one (1) day of making such a change.

### D. INDEPENDENT LICENSED ARCHITECT

16. Within one hundred eighty (180) days of the entry of this Consent Decree, the County will retain an Independent Licensed Architect ("ILA"), pre-approved initially and continually approved by the United States throughout the term of the Consent Decree, who is trained in and knowledgeable about the accessibility requirements of the ADA. The ILA must act independently to certify whether any alterations, additions, or modifications made by the County during the term of this Consent Decree comply with the applicable standard pursuant to 28 C.F.R. § 35.151(c) and the Appendix to 28 C.F.R. § 35.151(c). The County will bear all costs and expenses of retaining and using the ILA, including the costs and expenses of any consultants and staff used by the ILA. The County will compensate this ILA without regard to the outcome.

17. In issuing certifications pursuant to this Consent Decree, the ILA will impartially prepare reports identifying each violation and demonstrating with photographs each violation that has been remediated and will use the certification form at Attachment B. The ILA will be considered a neutral inspector for purposes of issuing certifications of compliance and will be reasonably available to the United States to discuss findings in its and the County's reports, photographs, and certifications. The United States may also, in its discretion, provide technical assistance to the ILA. Upon request by the United States, the County will provide prior notice to the United States of inspections by the ILA to allow representatives of the United States to be present.

18. The County will submit ILA certifications along with its reporting requirements as set forth in this Consent Decree.

//

### E. GRIEVANCE PROCEDURE

19. Within three (3) months of the entry of this Consent Decree, the County will adopt the attached *ADA Grievance Procedure*, Attachment C, distribute it to all of its agencies, post it on its website, and post copies of it in conspicuous locations in each of its public buildings. It will refresh each posted copy, and update the contact information contained on it, as necessary, for the term of the Consent Decree. The County will provide copies to any person upon request.

### F. GENERAL EFFECTIVE COMMUNICATION PROVISIONS

20. Within three (3) months of the entry of this Consent Decree, the County will identify sources of qualified sign language and oral interpreters, qualified readers, real-time transcription services, and vendors able to convert documents to Braille. Within this three (3) month timeframe, the County will implement and report to the United States its written procedures, with time frames, for providing and fulfilling requests for sign language or oral interpreters, qualified readers, real-time transcription services, and documents in alternate formats, including Braille, large print, audio recording, and accessible electronic format (*e.g.*, HTML).

21. Within three (3) months of the entry of this Consent Decree, the County will train all employees who communicate with the public to use the California Relay Service to make and receive calls, and report to the United States the details of the trainings including the identity of the employees trained. The County will train all new employees who will have contact with the public at least five (5) business days before they first have contact with the public.

### G. 911 EMERGENCY COMMUNICATIONS

22. Within three (3) months of the entry of this Consent Decree, the County will ensure that each of its 911 consoles or call stations can receive and respond to TTY communications effectively with an analog TTY or computer equivalent. Within three (3) months of the entry of this Consent Decree, the County will adopt written procedures for answering 911 calls and train all call takers to use a TTY or computer equivalent to take 911 calls. The training and procedures will include recognizing a "silent" open line as a potential TTY call, responding by analog TTY or computer equivalent, and answering TTY calls as quickly as other calls received. The County will monitor incoming 911 TTY calls, answer them as quickly and accurately as other calls, and send the written procedures and details

of the training and monitoring to the United States.

### H.     LAW ENFORCEMENT AND EFFECTIVE COMMUNICATION

23.     Within three (3) months of the entry of this Consent Decree, the County will implement the *Humboldt County Sheriff's Office's Policy Statement on Effective Communication with People Who are Deaf or Hard of Hearing*, Attachment D, and distribute to all sheriff department officers the *Guide for Law Enforcement Officers When in Contact with People Who are Deaf or Hard of Hearing*, Attachment E.

24.     Within three (3) months of the entry of this Consent Decree, the County will hire or contract with local qualified oral and sign language interpreters to be available to its sheriff's department twenty-four hours every day.

25.     Within three (3) months of the entry of this Consent Decree, the County will equip each sheriff station or substation and each jail and detention facility with a sufficient number of working TTYs, videophones, hearing aid compatible telephones, and volume control telephones, but no fewer than one (1) of each, to enable people who are deaf, hard of hearing, or who have speech impairments to make telephone calls of the same frequency and with the same availability as those people who do not use TTYs or videophones.  Where telephone calls are time-limited, the County will adopt policies permitting a longer period of time for individuals using a TTY, videophone, or relay service due to the slower nature of these communications as compared to voice communications.  If any person who is deaf, hard of hearing, or who has a speech impairment prefers a different method of communication, such as a captioned telephone or computer, the County will make reasonable efforts to provide the communication device requested.

### I.     EMERGENCY MANAGEMENT PROCEDURES AND POLICIES

26.     The County's Emergency Operations Plan ("EOP") must comply with the ADA.  The County will use Chapter 7 of the Department of Justice's *ADA Best Practices Tool Kit for State and Local Government* ("ADA Tool Kit") to address ADA obligations of emergency management, including planning, preparedness, evacuation, shelters, medical and social services, lodging and housing programs, recovery, and rebuilding.

27.     Within sixty (60) days of the entry of this Consent Decree, the County will incorporate

the provisions of Chapter 7 of the *ADA Tool Kit* into its EOP and provide a copy (including supporting documents) to the United States.

28. The County's EOP will include the following:

a) Procedures to solicit, receive, and use input from people with a variety of disabilities on its emergency management plan (preparation, notification, response, and clean-up).

b) Community evacuation plans to enable people who have mobility disabilities, are blind or have low vision, are deaf or hard of hearing, have cognitive disabilities, mental illness, or other disabilities to either safely self-evacuate or be evacuated by others.

c) If the County's emergency warning system uses sirens or other audible alerts, then procedures to effectively inform people who are deaf or hard of hearing of an impending disaster.

d) A requirement that emergency shelters have a back-up generator and a way to keep medications refrigerated (such as a refrigerator or a cooler with ice).  Access to back-up power and refrigeration at such shelters will be made available to people whose disabilities require access to electricity and refrigeration, for example, for using life-sustaining medical devices, providing power to motorized wheelchairs, and preserving certain medications, such as insulin, that require refrigeration. The written procedures will include a plan for notifying people of the location of such shelters.

e) Procedures ensuring that people who use service animals are not separated from their service animals when sheltering during an emergency, even if pets are prohibited in shelters.  The procedures will not segregate people who use service animals from others but may take into account the potential presence of people who, for safety or health reasons, should not be in contact with certain types of animals.

f) Plans for providing equivalent opportunities for accessible post-emergency temporary housing to people with disabilities.  The County will ensure that information it makes available regarding temporary housing includes information on accessible housing (such as accessible hotel rooms within the community or in nearby communities) that could be used if people with disabilities cannot immediately return home after a disaster if, for instance, necessary accessible features such as ramps or electrical systems have been compromised.

//

### J. PHYSICAL CHANGES TO EMERGENCY SHELTERS

29. Some County emergency shelters may be owned or operated by other public entities subject to Title II or by public accommodations subject to Title III and therefore they must provide program access or remove barriers to accessibility under the ADA. This Consent Decree does not limit future enforcement action against the other owners or operators of these emergency shelters.

30. Within nine (9) months of the entry of this Consent Decree, the ILA will survey all emergency shelters in the County using the survey instrument entitled *ADA Checklist for Emergency Shelters*, Attachment F to identify barriers to access for individuals with disabilities.

31. For County emergency shelters with barriers to access for individuals with disabilities, the County will either (1) remove all barriers to access by people with disabilities and have the ILA confirm removal of the barriers to the United States, or (2) relocate the emergency shelter to another facility that can be used as an emergency shelter and that has no barriers to access by people with disabilities within fifteen (15) months of the entry of this Consent Decree.

32. For shelters that are not owned or operated by the County, the County will request in writing that each of the owners and operators of the shelter facilities remove the noted barriers to access for people with disabilities within fifteen (15) months of the entry of this Consent Decree. The County will simultaneously send a copy of the request to the United States.

33. Within eighteen (18) months of the entry of this Consent Decree, the ILA will survey each shelter to determine whether the barriers have been removed. If not all barriers have been removed at a shelter, the County will identify and designate within twenty-four (24) months of the entry of this Consent Decree an accessible replacement shelter for each inaccessible shelter, which will be confirmed by the ILA using the survey instrument entitled *ADA Checklist for Emergency Shelters*, Attachment F.

34. Within three (3) months of the entry of this Consent Decree and until all emergency shelters are accessible as confirmed by the ILA, the County will identify and widely publicize to the public and to people with disabilities the most accessible emergency shelters.

### K. SIDEWALKS

35. Within six (6) months of the entry of this Consent Decree, the County will implement and report to the ILA and the United States its written process for requesting and receiving input from

people with disabilities regarding the accessibility of its sidewalks, including requests to add curb cuts at particular locations.

36. Within nine (9) months of the entry of this Consent Decree, the County and its ILA will identify and report to the United States: (1) a plan to identify all existing street level pedestrian walkways, streets, roads, and highways under the jurisdiction of Humboldt County that have not been constructed or altered since January 26, 1992; and (2) a timetable to provide curb ramps or other sloped areas that comply with the applicable architectural standards at all existing intersections of streets, roads, and highways having curbs or other barriers from a street level pedestrian walkway. The plan and timetable must be approved by the United States and will specify completion of all required curb ramps or other sloped areas that comply with the applicable architectural standards and the ADA within three (3) years. The plan and timetable shall give priority to requests from people with disabilities, walkways serving entities covered by the ADA, including state and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas.

37. Within three (3) years of the entry of this Consent Decree, the County will provide curb ramps or other sloped areas complying with the applicable architectural standards as permitted by 28 C.F.R. § 35.151(c) and its Appendix, copied below, at all intersections of the streets, roads, and highways constructed or altered since January 26, 1992, that have curbs or other barriers from a street level pedestrian walkway, and at all places where a street level pedestrian walkway constructed or altered since January 26, 1992, intersects with a street, road, or highway.

| **Date of Construction or Alteration** | **Applicable Standards** |
|---|---|
| Before September 15, 2010 | 1991 ADA Standards or Uniform Federal Accessibility Standards ("UFAS") |
| On or after September 15, 2010, and before March 15, 2012 | 1991 ADA Standards, UFAS, or 2010 ADA Standards |
| On or after March 15, 2012 | 2010 ADA Standards |

38. Annually, the ILA will confirm to the United States that the County has provided curb ramps or other sloped areas where required that are in compliance with the applicable architectural standards in accordance with the approved plan and its timetable. If the County fails to comply with the

approved plan and its timetable, the United States may file a motion to enforce this Consent Decree pursuant to paragraph 63.

39. Following entry of this Consent Decree, whenever a street, road, highway, or street level pedestrian walkway intersecting with a street, road or highway is constructed or altered, the County will provide curb ramps or other sloped areas complying with the 2010 ADA Standards at any intersection having curbs or other barriers to entry from a street level pedestrian walkway. Annually, the ILA will confirm to the United States that the County has provided curb ramps or other sloped areas where required that comply with the 2010 ADA Standards.

### L.   WEB-BASED SERVICES AND PROGRAMS

40. Within three (3) months of the entry of this Consent Decree, the County will:

a) Designate an employee as the Web Accessibility Coordinator for the County who will be responsible for coordinating the County's compliance with the requirements of this section, Section L, of this Consent Decree. The Web Accessibility Coordinator will have experience with the requirements of Title II of the ADA, the Web Content Accessibility Guidelines ("WCAG") version 2.0 (published by the World Wide Web Consortium ("W3C"), Web Accessibility Initiative ("WAI"), available at www.w3.org/TR/WCAG) and website accessibility generally; and

b) Retain an independent consultant ("Website Accessibility Consultant"), approved by the United States, who is knowledgeable about accessible website development, Title II of the ADA, and WCAG 2.0 to evaluate the County's website and any proposed online services for compliance with the ADA and, at minimum, WCAG 2.0 Level A and Level AA Success Criteria and other Conformance Requirements ("WCAG 2.0 AA"), and who will be responsible for the annual website accessibility evaluation described in detail in paragraph 41(d). The County will bear all costs and expenses of retaining and utilizing this Website Accessibility Consultant, including the costs and expenses of any staff needed by the Website Accessibility Consultant. The County will compensate this Website Accessibility Consultant without regard to the outcome.

41. Within two (2) months of the entry of this Consent Decree, and annually thereafter, the County will:

//

a) Adopt, implement, and post online a policy that its web pages will conform with WCAG 2.0 AA;

b) Distribute the policy to all employees and contractors who design, develop, maintain, or otherwise have responsibility for its websites, or provide website content, technical support, or customer service;

c) Provide training to website content personnel on how to conform all web content and services with, at minimum, WCAG 2.0 AA, Title II of the ADA, and the terms of this Consent Decree;

d) Assess all existing web content and online services covered by this Consent Decree for conformance with WCAG 2.0 AA and perform automated accessibility tests of the County's website and all of its online services, using an automated tool approved by the United States, to identify any accessibility barriers;

e) Provide a notice, prominently and directly linked from its homepage, instructing visitors to its websites on how to request accessible information. The link will provide several methods to request accessible information, including an accessible form to submit feedback, an email address, and a toll-free phone number to contact personnel knowledgeable about the accessibility of the website; and

f) Provide a notice, prominently and directly linked from its homepage, soliciting feedback from visitors to its websites on how to improve website accessibility. The link will provide several methods to provide feedback, including an accessible form to submit feedback, an email address, and a toll-free phone number to contact personnel knowledgeable about the accessibility of the website.

42. Within twelve (12) months of the entry of this Consent Decree, the County will:

a) Ensure that its websites and all online services, including those websites or online services provided by third parties upon which the County relies to allow members of the public to participate in or benefit from the County's programs, services, or activities, comply with WCAG 2.0 AA, with the exception of the following categories of content:

(1) Archived web content, *i.e.*, content maintained exclusively for reference, research, or recordkeeping, which is not altered or updated after the date of archiving, and which is

organized and stored in a dedicated area or areas clearly identified as being archived;

(2) Conventional electronic documents (*i.e.*, portable document file (PDF), word processor, presentation, spreadsheet, and database file formats) available on the County's websites as of the entry of this Consent Decree, unless such documents are to be used by members of the public to apply for, gain access to, or participate in the County's programs, services, or activities; and

(3) Conventional electronic documents (*i.e.*, PDF, word processor, presentation, spreadsheet, and database file formats) or any other submissions by a third party in connection with an administrative, judicial, or legal proceeding that are available on the County's websites; and

b) Assess all proposed online services before they are made available to the public for conformance with WCAG 2.0 AA and perform automated accessibility tests, using an automated tool approved by the United States, to identify any accessibility barriers.

## M. NEW CONSTRUCTION, ALTERATIONS, AND PHYSICAL CHANGES TO FACILITIES

43. All construction and alterations to County buildings and facilities by the County or on its behalf will comply with the requirements of 28 C.F.R. § 35.151, including applicable architectural standards. All architectural changes by the County or on its behalf made on or after March 15, 2012, must comply with the 2010 ADA Standards. The term "2010 ADA Standards" refers to the 2010 ADA Standards for Accessible Design (28 C.F.R. § 35.104 (Title II) (defining the "2010 ADA Standards" as the requirements set forth in appendices B and D to 36 C.F.R. part 1191 and the requirements contained in 28 C.F.R. § 35.151.)). All citations are to the 2010 ADA Standards unless otherwise noted.

44. The parts of a County facility that do not comply with the 1991 ADA Standards (or the 2010 ADA Standards, as applicable), as listed in Attachments G, H, I, and J, prevent people with disabilities from fully and equally enjoying the County's programs, services, or activities and constitute discrimination on the basis of disability within the meaning of 42 U.S.C. § 12132 and 28 C.F.R. §§ 35.149-35.151.

45. The County will remediate the violations listed in Attachments G, H, I, and J, by taking the actions outlined in those attachments within the specified timeframes. All architectural changes by

the County or on its behalf made on or after March 15, 2012, must comply with the 2010 ADA Standards. The County will complete all actions identified in Attachments G, H, I, and J no later than thirty-three (33) months from the date of entry of this Consent Decree. Specific deadlines for each facility are outlined in Attachments G, H, I, and J.

46. If the County has already undertaken an alteration, addition, or other modification to any element identified in Attachments G, H, I, or J or otherwise after January 26, 1992, and prior to the entry of this Consent Decree, the County will submit to the ILA and the United States within nine (9) months a written report pursuant to paragraph 61 below summarizing the actions taken, providing ILA certifications and providing evidence establishing each individual element's compliance with the applicable architectural standard as permitted by 28 C.F.R. § 35.151(c) and its Appendix, copied in the table below:

| Date of Construction or Alteration | Applicable Standards |
| --- | --- |
| Before September 15, 2010 | 1991 ADA Standards or UFAS |
| On or after September 15, 2010, and before March 15, 2012 | 1991 ADA Standards, UFAS, or 2010 ADA Standards |
| On or after March 15, 2012 | 2010 ADA Standards |

47. Within nine (9) months of the entry of this Consent Decree, the County will have the ILA survey all facilities that are the subject of this Consent Decree for the purpose of identifying those that have multiple entrances not all of which are accessible. Also within nine (9) months of the entry of this Consent Decree, the County will install directional signage at all inaccessible entrances to each of its facilities and will place the international symbol for accessibility at each accessible entrance to a facility, in accordance with 28 C.F.R. § 35.163(b).

48. Newly Constructed Facilities: The County will take the actions listed in Attachment G to make County facilities for which construction was commenced after January 26, 1992, readily accessible to and usable by people with disabilities.

49. Altered Facilities: The County will take the actions listed in Attachment H to make the altered parts of the County facilities for which alterations commenced after January 26, 1992, readily accessible to and usable by people with disabilities.

50. <u>Program Access in Existing Facilities</u>:  The County will take the actions listed in Attachment I to make each of the County's programs, services, and activities operating at a facility that is the subject of this Consent Decree, when viewed in its entirety, readily accessible to and usable by people with disabilities.

51. <u>County Facilities and Programs that Are Not Listed in This Consent Decree</u>:  The County and the ILA will ensure compliance with the requirements of Title II for all of the County facilities and programs that are not listed in this Consent Decree and its attachments.  The ILA will survey all the County's facilities for compliance with Title II of the ADA that the United States did not list in this Consent Decree.  Within nine (9) months of the entry of this Consent Decree, the County and ILA will submit to the United States a detailed report from the ILA listing the access issues identified during the ILA's review together with the corrective actions and completion dates proposed to resolve such issues.  The proposed completion dates may be no later than twelve (12) months prior to the termination of this Consent Decree.  The survey conducted by the ILA, the access issues identified, and the corrective actions and completion dates proposed will be consistent with the requirements of Title II; the review of the County facilities and programs conducted by the United States for purposes of this Consent Decree; and the access issues, corrective actions, and completion dates reflected in Attachments G, H, I, and J.

**N.    PROGRAM MODIFICATIONS**

52. <u>Access to County Programs Housed in Non-County Owned Facilities</u>:  To ensure that the County's programs, services, and activities that are the subject of this Consent Decree and that are operated by the County at facilities owned or controlled by other entities, when viewed in their entirety, are readily accessible to and usable by people with mobility impairments, the County will take the actions listed in Attachment J.

**O.    MONETARY RELIEF**

53. Within ten (10) business days after the entry of this Consent Decree, the County will deposit Two Hundred Seventy-Five Thousand Dollars ($275,000) in an interest-bearing account for the purpose of compensating aggrieved persons who have been harmed by the County's noncompliance with the ADA.  Within fifteen (15) business days after the entry of this Consent Decree, the County will submit proof to the United States that the account has been established and the funds deposited.  The

County will bear all costs of establishing the account, maintaining it, and issuing checks from it. Copies of account statements will be promptly provided to the United States, upon request.

54. Within thirty (30) days after the entry of this Consent Decree, the County will produce to the United States any complaints about access to any County facilities, programs, services, or activities that it has received from or on behalf of an individual alleged to have a disability.

55. Within ninety (90) days of the effective date of this Consent Decree, the United States will determine which persons have already been harmed by ADA violations in the County and will determine in its sole discretion an appropriate amount of damages to be awarded each such person, provided that: No person will be paid pursuant to this Section of the Consent Decree until the United States has received an executed "Waiver and Release of Claims" form from that person that is substantially similar to the form attached as Attachment K. The total amount to be paid by the County pursuant to this Section of the Consent Decree will not exceed Two Hundred Seventy-Five Thousand Dollars ($275,000) plus any interest accrued in the account established under paragraph 53.

56. The United States will notify the County in writing in one or more notifications of its determinations of the amount to be paid to each aggrieved person. Within thirty (30) days after receiving each such written notification, the County will deliver to the United States checks to the aggrieved persons made payable as directed by the United States. The United States will provide a copy of the executed "Waiver and Release of Claims" forms before sending checks to the aggrieved persons.

57. The United States may also seek compensation in the future for individuals aggrieved by non-compliance with the Consent Decree. The Court shall have jurisdiction over any such claims.

**P. MAINTENANCE OF ACCESSIBLE FEATURES AND TRAINING**

58. Throughout the term of this Consent Decree, consistent with 28 C.F.R. § 35.133(a), the County will maintain the accessibility of its programs, services, activities, facilities, and equipment, including routinely testing accessibility equipment and routinely auditing the accessibility of its programs and facilities. This provision, however, does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs. 28 C.F.R. § 35.133(b).

59. Within nine (9) months of the entry of this Consent Decree, the County will submit for pre-approval by the United States a proposed training program, lasting at least four hours, on the

requirements of the ADA and appropriate ways of serving people with disabilities.  The submission will include a description of the training, the agenda, any handouts, and the name, title, and address of the trainer.

60.     Within one (1) year of the entry of this Consent Decree and annually thereafter, after approval of the training program by the United States, all County employees who have direct contact with members of the public will be trained for at least four hours on the requirements of the ADA and appropriate ways of serving people with disabilities.  Within thirty (30) days after each training the County will submit to the United States the list of employees trained.

61.     Beginning six (6) months after the entry of this Consent Decree and every six (6) months thereafter throughout the term of this Consent Decree, the County will submit written reports to the United States summarizing the actions taken by the County to comply with this Consent Decree, including modified facilities, programs, services, and activities.  The report will include the ILA certifications received pursuant to paragraphs 16 through 18 of this Consent Decree, photographs showing measurements, architectural plans, notices published in the newspaper, copies of adopted policies and a copy of any other documents or information required by this Consent Decree.  The reports will include input from the County's ADA Coordinators.

**Q.     COMPLIANCE**

62.     It is a violation of this Consent Decree for the County to fail to comply in a timely manner with any of the requirements of this Consent Decree.

63.     The United States may review compliance with this Consent Decree at any time and may file a motion to enforce this Consent Decree if it believes that the Consent Decree, or any requirement thereof, has been violated.  The United States may conduct an on-site review of any County facility, review any County records related to actions required by the Consent Decree, and interview any County employees or contractors for purposes of reviewing compliance with this Consent Decree and ADA requirements, including the requirements of the ADA Standards.  If the United States identifies any noncompliance with the Consent Decree or the ADA Standards, the County must correct its noncompliance within thirty (30) days of receipt of notice of noncompliance from the United States or the United States may seek the Court's assistance to enforce this Consent Decree.

64. Any time limits for performance imposed by this Consent Decree may be extended by the mutual written agreement of the Parties, except for the term of this Consent Decree in paragraph 70.

65. Failure by the United States to enforce this Consent Decree or any of its provisions or deadlines will not be construed as a waiver of the right of the United States to enforce any deadlines and provisions of this Consent Decree.

66. All material sent to the United States pursuant to this Consent Decree will be sent to the following address by common carrier, delivery prepaid: U.S. Department of Justice, Civil Rights Division, Disability Rights Section, Attn: Dov Lutzker, Trial Attorney, 1425 New York Avenue, NW, Washington, DC 20005, or by email at dov.lutzker@usdoj.gov. The cover letter will include a subject line referencing Humboldt County and DJ# 204-11-275.

67. This Consent Decree (including its Attachments) is the entire agreed order between the parties on the matters raised herein, and no other statement, promise, or agreement, either written or oral, made by either party will be enforceable. This Consent Decree does not relieve the County of its continuing obligation to comply with all aspects of the ADA.

68. The County will provide a copy of this Consent Decree and any information contained in it, including Attachments A through K, to any person, upon request.

69. This Consent Decree is binding on Humboldt County, and its agents, officers, employees, contractors, and successors in interest.

70. This Consent Decree will remain in effect for a minimum of forty-two (42) months. The Court shall retain continuing and exclusive jurisdiction for the duration of the Decree to enforce the terms of the Decree. The United States and/or the County may apply to the Court for such further orders as may be necessary for, or consistent with, the enforcement of this Decree, including an extension of the Consent Decree if the County fails to comply with the provisions herein.

1
2   **IT IS SO ORDERED**.
3   Dated: September 13, 2016
4
5                                       _____
                                        NANDOR J. VADAS
                                        United States Magistrate Judge
6
7   By their signatures below, the Parties respectfully consent to the entry of this Consent Decree.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| **FOR HUMBOLDT COUNTY BOARD OF SUPERVISORS:** | FOR THE UNITED STATES OF AMERICA: |
| | VANITA GUPTA<br>Principal Deputy Assistant Attorney General<br>Civil Rights Division |
| /s/Mark Lovelace<br>MARK LOVELACE<br>Chair<br>Humboldt County Board of Supervisors | EVE L. HILL<br>Deputy Assistant Attorney General<br>Civil Rights Division |
| Date August 9, 2016 | BRIAN J. STRETCH<br>United States Attorney<br>Northern District of California |
| | REBECCA B. BOND<br>Chief<br>KEVIN J. KIJEWSKI<br>Deputy Chief<br>Disability Rights Section<br>Civil Rights Division |
| | /s/Dov Lutzker<br>DOV LUTZKER, Trial Attorney<br>California Bar 185106<br>Disability Rights Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W. – NYA<br>Washington, DC 20530<br>Telephone: (202) 514-5746<br>Facsimile: (202) 514-7821<br>Dov.Lutzker@usdoj.gov |
| | SARA WINSLOW<br>Chief<br>Civil Division<br>Assistant United States Attorney |
| | /s/Melanie Proctor_____<br>MELANIE PROCTOR<br>Assistant United States Attorney<br>United States Attorney's Office<br>Northern District of California<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br>Telephone: (415) 436-6730<br>Facsimile: (415) 436-6748<br>Melanie.Proctor@usdoj.gov |
| | Date September 7, 2016_____ |